IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JASON T. GATLIN,

      Plaintiff,

vs.                                       1:20-cv-00865-JCH-LF

NEW MEXICO DEPARTMENT OF CORRECTIONS,
and CORECIVIC INC.,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on defendant CoreCivic, Inc.'s ("CoreCivic")

Motion to Dismiss Plaintiff's Complaint, filed on May 18, 2021.  Doc. 8.  Plaintiff Jason T.

Gatlin filed his response on June 30, 2021.[1]  Doc. 11.  CoreCivic filed its reply on July 14, 2021.

Doc. 13.  The Honorable District Judge Judith C. Herrera referred this case to me to conduct

hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required

to recommend to the Court an ultimate disposition of the case.  Doc. 9.  Having read the

submissions of the parties and the relevant case law, I find that the motion is well-taken, and I

recommend that the Court GRANT the motion.

### I.    Standard of Review

In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all

well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to

---

[1] In its reply, CoreCivic argues that Mr. Gatlin failed to file a timely response in opposition to its motion, which constitutes consent to granting the motion.  Doc. 13 at 1–2.  The Court will not grant the motion on this basis.  CoreCivic did not object to Mr. Gatlin's requests for an extension of time.  *See id.* at 2.  Further, neither party identified a specific date for Mr. Gatlin to file a response.  *See id.*  I find, therefore, that CoreCivic agreed to an open-ended extension, and that Mr. Gatlin's response was timely.

the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).  A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In other words, a complaint must include enough facts to state a claim to relief that is plausible on its face. *Id.* at 555–56.  The allegations must be sufficient to establish that, if true, "the plaintiff plausibly (not just speculatively) has a claim for relief." *Corder v. Lewis Palmer School Dist. No. 38*, 566 F.3d 1219, 1224 (10th Cir. 2009) (internal quotation marks and citation omitted).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.  *Twombly*, 550 U.S. at 556.  Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Iqbal,* 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).[2]

---

[2] Mr. Gatlin recites a standard for dismissal that is outdated and inapplicable.  Citing *Morse v. Regents of Univ. of Colorado*, 154 F.3d 1124, 1127 (10th Cir. 1998), Mr. Gatlin contends that dismissal is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Doc. 11 at 2.  The standard applied in *Morse* comes from a 1957 case, *Conley v. Gibson*, 355 U.S. 41 (1957).  Mr. Gatlin also relies on *Conley* for the proposition that the Federal Rules of Civil Procedure require that "a plaintiff's statement of the claims in their Complaint only include a 'short and plain statement . . . showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 4 (quoting *Conley*, 355 U.S. at 47).  Conley was abrogated by *Twombly* in 2007 and is no longer the standard for evaluating the sufficiency of a complaint under Rule 12(b)(6).  *See Twombly*, 550 U.S. at 560–63 (explaining

## II.    Facts Considered by the Court

As an initial matter, in his response, Mr. Gatlin submits "Plaintiff's Statement of Material

Facts." Doc. 11 at 3–4. A statement of material facts is generally not considered when

addressing a motion to dismiss pursuant to Rule 12(b)(6) because the court accepts all factual

allegations contained in the complaint as true and does not look beyond the facts alleged in the

complaint. Courts must evaluate whether the complaint contains "enough facts to state a claim

to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. If the Court, when addressing a

Rule 12(b)(6) motion, looks to matters that were not attached to the complaint or incorporated

into the complaint by reference, it generally must convert the motion to a Rule 56 motion for

summary judgment. FED. R. CIV. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers*, 130

F.3d 1381, 1384–85 (10th Cir. 1997).[3]

---

that the phrase "prove no set of facts in support of his claim" "is best forgotten as an incomplete,
negative gloss on an accepted pleading standard"). Mr. Gatlin also cites to the New Mexico
State cases of *Young v. Van Duyne*, 2004-NMCA-074, 135 N.M. 695, 92 P.3d 1269 and *Madrid
v. Vill. of Chama*, 2012-NMCA-071, 283 P.3d 871, which recite standards for a motion to
dismiss in state court that are inapplicable in this Court.

[3] The standard for evaluating a motion for summary judgment is different than the standard for
evaluating a motion to dismiss. Summary judgment will be granted "if the movant shows that
there is no genuine dispute as to any material fact and the movant is entitled to judgment as a
matter of law." FED. R. CIV. P. 56(a). A genuine dispute exists if "the evidence is such that a
reasonable jury could return a verdict for the nonmoving party" on the issue. *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the
outcome of the suit under the governing law will properly preclude the entry of summary
judgment." *Id.* The movant bears the initial burden of establishing that there is no genuine issue
as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex
Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "[T]he movant need not negate the non-movant's
claim, but need only point to an absence of evidence to support the non-movant's claim."
*Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Sigmon v.
CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)). If this burden is met, the
non-movant must come forward with specific facts, supported by admissible evidence, which
demonstrate the presence of a genuine issue for trial. *Celotex*, 477 U.S. at 324. The non-moving
party cannot rely upon conclusory allegations or contentions of counsel to defeat summary
judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir.

The Court may consider three types of documents relevant to a motion to dismiss without converting it to a motion for summary judgment.  First, a court can take judicial notice of "documents and docket materials filed in other courts."  *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1298 n.2 (10th Cir. 2014).  Second, a court may consider documents that are a matter of public record.  *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).  Third, if a "document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

In his "Statement of Material Facts," Mr. Gatlin asks the Court take judicial notice of *Gatlin v. Corizon Medical, et al*, 1:15-cv-00965-RB-KBM, a case filed in this court ("*Gatlin 1*"); *Gatlin v. CoreCivic, Inc., and Centurion Correctional Healthcare of New Mexico, L.L.C.*, D-202-CV-2020-00759, a case filed in New Mexico state court and subsequently removed to this Court and styled *Gatlin v. CoreCivic, Inc et al*, 1:21-cv-00680-RB-JHR ("*Gatlin 2*"); and the Second Revised Settlement Agreement in *Duran, et al v. Grisham, et al.*, 1:77-cv-00721-KK-SCY, Doc. 3205 (the "Duran Consent Decree").  Doc. 11 at 3–4.  Mr. Gatlin appears to be asking the Court to accept the factual allegations contained in the other cases to supplement the allegations in the complaint he filed in this case.  For example, Mr. Gatlin asks the Court to take judicial notice of *Gatlin 1* "with allegations of sexual assault" and the "presumption of violations of overcrowding under the 'Duran Consent Decree.' "  *Id*.  Mr. Gatlin provides no authority to support the notion that the Court can judicially notice factual allegations in a prior lawsuit to

---

1988).  Rather, the non-movant has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment."  *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

support a claim in a subsequent matter.  Indeed, the law is to the contrary.

Although the Court may take judicial notice of docket materials and documents that are a matter of public record, it will take judicial notice only of those facts that are "not subject to reasonable dispute." *Simon v. Taylor*, 252 F. Supp. 3d 1196, 1239 (D.N.M. 2017), *aff'd*, 794 F. App'x 703 (10th Cir. 2019) (unpublished).  "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2).

> Judicial notice is proper when a fact is beyond debate, for instance, what time the sun sets on a given day.  When courts have taken judicial notice of contents of news articles, they have done so for proof that something is publicly known, not for the truth of the article's other assertions.

*The Estate of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098, 1111 (10th Cir. 2016).  "On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Id*. (internal quotations and citations omitted).  The Tenth Circuit has stated "that when a district court considers its own files and records in ruling on a Rule 12(b)(6) motion, the documents may only be considered to show their contents, not to prove the truth of matters asserted therein." *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (internal quotations and citation omitted).  The Court, therefore, will not take judicial notice of the factual allegations contained in *Gatlin 1* or *Gatlin 2*.[4]

---

[4] Mr. Gatlin requests that the Court not only take judicial notice of *Gatlin 2*, but also that it stay this case until it can be consolidated with *Gatlin 2*.  Doc. 11 at 3.  The Court will not address Mr. Gatlin's request to stay this case because that issue is not properly before the Court.  "A motion must be in writing and state with particularity the grounds and the relief sought." D.N.M.LR-Civ. 7.1.  Mr. Gatlin did not file a motion to consolidate or stay proceedings in this matter, and a response to a motion to dismiss is not the proper vehicle to seek this relief.  The Court notes that Mr. Gatlin also has not filed a motion to consolidate in *Gatlin 2*. *See Gatlin v. CoreCivic, Inc et al*, 1:21-cv-00680-RB-JHR.

The Court will take judicial notice of the existence of the "Duran Consent Decree" because it is a matter of public record. The Duran Consent Decree constitutes a settlement agreement between the parties in *Duran, et al v. Grisham, et al.,* 1:77-cv-00721-KK-SCY. The Court will not take judicial notice of the factual allegations that led to the Duran Consent Decree, as those factual allegations are subject to reasonable dispute. The Court, however, may consider the Consent Decree to the extent it has any bearing on whether Mr. Gatlin states a claim for a violation of his constitutional rights based on a violation of the Consent Decree.

For the reasons stated above, the Court will not convert CoreCivic's motion to dismiss into a motion for summary judgment and will analyze the motion under the standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

III.    **Mr. Gatlin's Complaint**

A.    Facts

Mr. Gatlin is an inmate housed at the Northwest New Mexico Corrections Center ("NNMCC") in Grants, New Mexico. Doc. 1-1 at 3. NNMCC is owned by CoreCivic Inc. *Id.* CoreCivic is under contract with the New Mexico Corrections Department ("NMCD"). *Id.* Mr. Gatlin alleges that CoreCivic and NMCD (collectively "defendants") are in violation of the Duran Consent Decree and knowingly have operated the CoreCivic facility well above maximum capacity. *Id.* Mr. Gatlin further alleges that defendants intentionally inflicted emotional distress, and mental and emotional injuries on him. *Id.* Mr. Gatlin has slept within arm's reach of another inmate for three years, which he alleges is in violation of the Prison Rape Elimination Act ("PREA"). *Id.* Mr. Gatlin has had five or more staph infections, which he asserts are a result of unsanitary living conditions. *Id.* In addition, the same meals have been served for over three years. *Id.*

B.  Mr. Gatlin's Claims

Mr. Gatlin alleges a violation of his Eighth Amendment and Fourteenth Amendment rights to be free from cruel and unusual punishment and his "right to be afforded a reasonable degree of safety from serious bodily harm" (Count 1); a violation of his Eighth Amendment and Fourteenth Amendment rights of substantive due process (Count 2); and that defendants' custom, practice, or policy caused violations of his constitutional rights (Count 3).  Doc. 1-1 at 4.  Mr. Gatlin further alleges negligence, and negligently hiring, training, and credentialing by defendants' 1) failing to hire well qualified employees; 2) failing to provide or require adequate training of personnel; and 3) failing to provide adequate guidelines for the treatment, safety, and health of inmates (Count 4).  Finally, Mr. Gatlin claims "negligence per se," alleging that defendants owed him a duty to use ordinary care in providing services at NNMCC, and that defendants failed to provide ordinary care, and acted willfully, recklessly, and negligently by inflicting emotional distress through their extreme and outrageous conduct (Count 5).

Mr. Gatlin's complaint fails to provide factual allegations sufficient to establish that, even if true, he has a plausible claim for relief for a violation of his constitutional rights.  Because Mr. Gatlin fails to state a claim for a constitutional violation, I recommend that the Court dismiss his constitutional claims.  I further recommend that the Court not exercise supplemental jurisdiction over his state law claims, and that it remand those claims to the state court.

IV.  **Discussion**

A.  Plaintiff Fails to State a Claim Pursuant to § 1983.

The first flaw in Mr. Gatlin's complaint is that he has failed to name any individual that allegedly violated his constitutional rights.  A plaintiff cannot sue for damages directly pursuant to the articles and amendments of the U.S. Constitution, but instead must bring any claim for

damages based on a constitutional violation under 42 U.S.C. § 1983.[5]  Section 1983 is the

exclusive vehicle for vindication of substantive rights under the U.S. Constitution.  *May v. Bd. of*

*County Commissioners of Dona Ana County*, 426 F. Supp. 3d 1013, 1017–18 (D.N.M. 2019)

(citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Section 1983 does not create any

substantive rights, but merely provides the procedural mechanism for the enforcement of existing

constitutional and federal statutory rights.  *Nelson v. Geringer*, 295 F.3d 1082, 1097 (10th Cir.

2002).  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage of any State . . . subjects or causes to be subjected, any citizen of
> the United States . . . to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law . . . .

42 U.S.C. § 1983.

To state a claim for relief under § 1983, a plaintiff must establish (1) a violation of rights

protected by the federal Constitution or created by a federal statute or regulation, (2) that was

proximately caused (3) by the conduct of a "person," (4) who acted under color of any state

statute, ordinance, regulation, custom or usage.  *Summum v. City of Ogden*, 297 F.3d 995, 1000

(10th Cir. 2002).  There must be a connection between the official conduct and the violation of a

constitutional right.  Conduct that is not connected to a constitutional violation is not actionable

under § 1983.  *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006).

Further, a civil rights action against a public official or entity may not be based solely on

a theory of *respondeat superior* or vicarious liability for the actions of co-workers or

subordinates.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).

---

[5] Mr. Gatlin acknowledges in his response—but does not allege in his complaint—that his claims
are brought pursuant to § 1983.  Doc. 11 at 5–6.

A government entity cannot be held liable for the acts of its employees and agents under § 1983; the government entity may only be held liable for its own constitutional torts. *Id.*  Consequently, a plaintiff must plead that each government official, through the official's own actions, violated the plaintiff's constitutional rights. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

To state a claim under § 1983, it is particularly important that a plaintiff's complaint "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claim against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in the original).  "[C]ollective allegations against the state" are not sufficient in a § 1983 claim; a plaintiff must identify who exactly injured him and then join that party as a defendant. *Id.*; *see also Stone v. Albert*, 338 F. App'x 757, 759 (10th Cir. 2009) (unpublished) (quoting *Robbins*, 519 F.3d at 1250).

Mr. Gatlin does not challenge the fact that his complaint must identify specific defendants. *See generally* Doc. 11.  And yet, "his complaint is devoid of any allegations that any named government official, through the official's own individual actions, violated the Constitution." *Cox v. Civil Courthouse State Judges & Staff*, 2021 WL 765101, at *6 (D.N.M. Feb. 27, 2021); *see* Doc. 1-1.  In his response, Mr. Gatlin merely reiterates the collective allegation that "[d]efendants' omissions arose from the deliberate indifference to inmate health or safety sought to be remedied by the implementation of the Duran Consent Decree and PREA." Doc. 11 at 10.  Mr. Gatlin's failure to identify any specific individual defendant who violated his constitutional rights through his or her deliberate indifference is fatal to Mr. Gatlin's civil rights

claims pursuant to § 1983.  The Court, therefore, concludes that the complaint fails to state a civil rights claim against any government official.

      B.  <u>Plaintiff Fails to State a Claim under the Eighth and Fourteenth Amendments</u>.

In Count 1 of his complaint, Mr. Gatlin alleges a violation of his Eighth and Fourteenth Amendment rights "to be free from cruel and unusual punishment and a right to be afforded a reasonable degree of safety from serious bodily harm."  Doc. 1-1 at 4.  In Count 2, Mr. Gatlin alleges a violation of his Eighth and Fourteenth Amendment rights to substantive due process, alleging that the defendants deliberately and maliciously disregarded his medical needs.  *Id.*  In addition to failing to identify any person who violated his constitutional rights, Mr. Gatlin also fails to allege sufficient facts to state a plausible claim for a violation of his Eighth and Fourteenth Amendment rights.

"Where constitutional protection is afforded under specific constitutional provisions, alleged violations of the protection should be analyzed under those provisions and not under the more generalized provisions of substantive due process."  *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).  Here, because the Eighth Amendment provides an explicit textual source for Mr. Gatlin's claims, a substantive due process analysis under the Fourteenth Amendment is inapplicable.  *Id.*  The Court, therefore, will analyze Mr. Gatlin's claims under the Eighth Amendment as made applicable to the states through the Fourteenth Amendment.[6]  *Id.*

---

[6] In his response, Mr. Gatlin identifies standards for a claim under the Fourteenth Amendment. *See* Doc. 11 at 5 (stating the relationship between § 1983 and the Fourteenth Amendment); 10 (describing the "special relationship" doctrine).  The special relationship doctrine is an exception to the general principal that negligence does not trigger the Due Process Clause's protections, except where a special relationship exists between the state and an individual.  *See Glover v. Gartman*, 899 F. Supp. 2d 1115, 1132 (D.N.M. 2012) (explaining that generally negligence does not trigger the Due Process Clause's protections and the special relationship doctrine).  The Due Process Clause of the Fourteenth Amendment, however, governs a pretrial detainee's claim of unconstitutional conditions of confinement, *Craig v. Eberly*, 164 F.3d 490,

The Eighth Amendment prohibits "cruel and unusual punishments."  U.S. Const. amend. VIII.  When a prisoner is incarcerated after being convicted, the Eighth Amendment protects him from "[a] prison official's deliberate indifference to a substantial risk of serious harm."  *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020), *cert. denied*, 142 S. Ct. 312 (2021).  "The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm."  *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).  "[N]either prison officials nor municipalities can absolutely guarantee the safety of their prisoners," but "[t]hey are . . . responsible for taking reasonable measures to insure the safety of inmates."  *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389 (2015).  An official violates the Eighth Amendment when two elements are met: (i) the official causes an injury that, objectively, is "sufficiently serious," that is, an injury that equates to the "denial of the minimal civilized measure of life's necessities"; and (ii) the official has a "sufficiently culpable state of mind."  *Tafoya,* 516 F.3d at 916.  The second condition represents the functional application of the deliberate indifference standard.  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety."  *Id*. (internal citation and quotation marks omitted).  Thus, "[t]o establish a cognizable Eighth Amendment claim for

---

495 (10th Cir. 1998) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)), whereas the Eighth Amendment applies to a prisoner who is incarcerated after being convicted, *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  *See Kingsley v. Hendrickson*, 576 U.S. 389, 400–01 (2015) (discussing distinction between excessive force claims brought by pretrial detainees and those brought by convicted prisoners).  Mr. Gatlin is not a pretrial detainee; therefore, the Due Process Clause of the Fourteenth Amendment does not apply.  *See* Amended Judgement and Sentence attached as "Exhibit A" to this opinion, of which the Court takes judicial notice.

failure to protect [an inmate from harm], the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm[,] the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006) (internal citation and quotation marks omitted). Mr. Gatlin's complaint fails to establish either the objective or subjective component of an Eighth Amendment claim.

### 1. *Mr. Gatlin's Complaint Does Not Satisfy the Objective Element.*

Analyzing whether the plaintiff has satisfied the first element, the objective element, "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such an injury to health will actually be caused." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Courts should also consider "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Id.* "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.*

Mr. Gatlin alleges that CoreCivic operates NNMCC "well above the maximum capacity" in violation of the Duran Consent Decree and that he has "slept within arm's reach of another inmate" for three years, in violation of the PREA.[7]  Doc. 1-1 at 3.  Mr. Gatlin further alleges that

---

[7] Mr. Gatlin argues that "[a] prison's failure to prevent harm under the PREA violates constitutional rights." Doc. 11 at 10. He further contends that "[a] prison's failure to prevent harm by implementing the policies of the Duran Consent Decree violates constitutional rights." *Id.* These arguments are unavailing because Mr. Gatlin does not identify who violated the PREA and the Duran Consent Decree, how that official violated the statue and the settlement agreement, or what substantial risk of serious harm he suffers by the violations. Further, to the extent Mr. Gatlin is attempting to sue CoreCivic for allegedly violating the PREA, he fails to state a claim. Mr. Gatlin cannot sue for violation of the PREA. The PREA, 42 U.S.C. §§ 15601–15609, "authorizes the reporting of incidents of rape in prison, allocation of grants, and creation of a study commission," but there is nothing in the PREA to indicate that it created a private right of action, enforceable under § 1983. *Langston v. Friend*, 2021 WL 1694321, at *5

"[t]he same meals have been served for over 3 years." *Id*.  Taken as true, these allegations alone do not identify a substantial risk of serious harm.  Mr. Gatlin does not allege how the alleged overcrowding, sleeping within arm's reach of another inmate,[8] or being served the same meals poses a substantial risk of serious harm.  Mr. Gatlin does not allege that these particular conditions have caused him any harm or why he believes he is at risk of serious harm.  While Mr. Gatlin alleges that he suffered "mental and emotional injury," he does not describe the nature or extent of the injury he suffered.  Consequently, the Court cannot discern whether the alleged "mental and emotional injury" is sufficiently serious to constitute a substantial risk of serious harm.  The Court cannot draw an inference based on the minimal facts alleged that CoreCivic caused a substantial risk of serious harm.

Mr. Gatlin also alleges that he contracted "5 or more staph infections[9] due to unsanitary living conditions," implicating his Eighth Amendment right to adequate medical care.  Doc. 1-1

---

(D. Kan. Apr. 29, 2021) (collecting cases).  "In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal right, not merely a violation of federal law."  *Id*. (internal citation and quotation marks omitted).  As a matter of law, Mr. Gatlin cannot pursue a § 1983 claim based on an alleged failure to comply with the PREA.

[8] In his response, Mr. Gatlin contends that a previous sexual assault left him with "deep rooted emotional trauma that made him more susceptible to emotional distress caused by having to sleep within arms' reach of other inmates."  Doc. 11 at 10.  This argument is unavailing as none of the allegations regarding his previous sexual assault, the emotional trauma from that assault, or his susceptibility to emotional distress are alleged in his complaint.  Although the allegations may be contained in another lawsuit, the allegations in another case do not assist Mr. Gatlin in establishing the objective element of a claim for a violation of the Eighth Amendment in this complaint.

[9] "Staph infections are caused by staphylococcus bacteria, types of germs commonly found on the skin or in the nose of even healthy individuals.  Most of the time, these bacteria cause no problems or result in relatively minor skin infections.  But staph infections can turn deadly if the bacteria invade deeper into your body, entering your bloodstream, joints, bones, lungs, or heart. A growing number of otherwise healthy people are developing life-threatening staph infections. Treatment usually involves antibiotics and drainage of the infected area.  However, some staph infections no longer respond to common antibiotics.  Many people carry staph bacteria and never develop staph infections.  However, if you develop a staph infection, there's a good chance that

at 3.  "A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prove the objective element of an Eight Amendment violation, a prisoner must produce objective evidence showing that his medical need was "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citations and internal quotation marks omitted).  A delay in medical treatment only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm.  *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001).  The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Mata*, 427 F.3d at 751 (citing *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

As CoreCivic points out, Mr. Gatlin "fails to connect the dots between his alleged injury and the unsanitary conditions."  Doc. 8 at 9.  For example, he does not state when and how he contracted staph infections, the details of the alleged unsanitary conditions, or that he was exposed to any such conditions.  Mr. Gatlin fails to allege the type of staph infection,[10] the

it's from bacteria you've been carrying around for some time.  These bacteria can also be transmitted from person to person.  Because staph bacteria are so hardy, they can live on objects such as pillowcases or towels long enough to transfer to the next person who touches them." https://www.mayoclinic.org/diseases-conditions/staph-infections/symptoms-causes/syc-20356221 (Last visited 1/18/2022).

[10] There are several types of staph infections including skin infections, food poisoning, bacteremia or bloodstream infection, toxic shock syndrome, and septic arthritis. https://www.mayoclinic.org/diseases-conditions/staph-infections/symptoms-causes/syc-20356221 (Last visited 1/18/2022).

seriousness of the staph infection, and how CoreCivic caused a "serious risk of harm" because of the infection.  There are no allegations that Mr. Gatlin had a medical need that was diagnosed by a physician and that needed medical treatment.  Mr. Gatlin additionally fails to allege whether he sought and received medical attention and whether any such medical attention was adequate. There are no allegations that show that the seriousness of his alleged staph infections was so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Again, the Court cannot infer from the facts alleged that CoreCivic caused a serious risk of harm. Mr. Gatlin's complaint fails to include facts sufficient to raise a right to relief for deliberate indifference to his serious medical needs above the speculative level.  Mr. Gatlin's complaint does not allege sufficient facts to establish the objective element of his Eighth Amendment claim.

### 2.  *Mr. Gatlin's Complaint Does Not Satisfy the Subjective Element.*

The second element regarding the government official's state of mind is a subjective inquiry.  *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Courts apply this subjective inquiry to determine whether the allegations are that a "short-term" or "one-time" violation occurred, or that "continuing" or "systemic" violations occurred.  *Id.* at 299.  The Supreme Court has stated: "With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness."  *Farmer*, 511 U.S. at 836; *see also Belcher v. United States*, 216 F. App'x 821, 823–24 (10th Cir. 2007) (unpublished) (quoting *Smith*, 445 F.3d at 1258).  The Supreme Court provided the following test for determining when this subjective element is met:

> [A] prison official cannot be found liable under the Eighth Amendment for
> denying an inmate humane conditions of confinement unless the official knows of
> and disregards an excessive risk to inmate health or safety; the official must both

be aware of facts from which the inference could be drawn that a substantial risk
of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.

Here, as discussed above, Mr. Gatlin did not identify a single prison official in his

complaint.  Mr. Gatlin does not make any allegations regarding an official's knowledge and

disregard of an excessive risk to his health or safety.  Mr. Gatlin's complaint does not allege

sufficient facts to satisfy the second element of his Eighth Amendment claim.

    C.  <u>Plaintiff Fails to State a Claim for "Municipal Liability</u>."

Municipalities and other local governmental bodies are "persons" within the meaning of

§ 1983.  *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403–04 (1997)

(citing *Monell*, 436 U.S. at 689).  It is well settled that *Monell* also extends to private defendants

sued under § 1983.  *Smedley v. Corr. Corp. of Am.*, 175 F. App'x 943, 946 (10th Cir. 2005)

(unpublished).  As such, a private actor such as CoreCivic "cannot be held liable solely because

it employs a tortfeasor—or, in other words . . . cannot be held liable under § 1983 on a

respondeat superior theory."  *Monell*, 436 U.S. at 691.  Rather, to establish municipal liability, a

plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct

causal link between the policy or custom and the injury alleged.  *Hinton v. City of Elwood,* 997

F.2d 774, 782 (10th Cir.1993).  A municipality is not liable for constitutional violations when

there was no underlying constitutional violation by any of its officers.  *Olsen v. Layton Hills

Mall*, 312 F.3d 1304, 1317–18 (10th Cir. 2002).

In Count 3 of his complaint, Mr. Gatlin alleges that "[d]efendants acts and omissions

were pursuant to policy and custom," causing a violation of his constitutional rights.  This count

fails to state a claim for relief.  First, as discussed above, Mr. Gatlin's complaint does not set

forth sufficient facts to allege an underlying constitutional violation by any officer employed by

CoreCivic.  Second, Mr. Gatlin does not identify any custom or policy established by CoreCivic and, consequently, does not allege facts that there is a direct causal link between the policy or custom and the injury alleged.[11]  Mr. Gatlin fails to state a claim for municipal liability under § 1983.

  D.  <u>Supplemental Jurisdiction</u>

  Federal courts are "courts of limited jurisdiction."  *Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546, 552 (2005).  Federal courts have the authority to hear controversies arising under federal law—federal-question jurisdiction—and controversies arising between citizens of different states—diversity jurisdiction.  *See* 28 U.S.C. §§ 1331, 1332.  Once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy.  *Exxon Mobil Corp*., 545 U.S. at 552; 28 U.S.C. § 1367(a).  Federal courts may exercise pendent jurisdiction over state law claims when "state and federal claims . . . derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

  "When all federal claims have been dismissed," however, "the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."  *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir.1998)).  The Supreme Court has recognized:

---

[11] Mr. Gatlin contends in his response that "the deliberate indifference comes from the fact that Defendants turned a blind eye, creating a de facto policy not to implement the requirements under the Duran Consent Decree and PREA."  Doc. 11 at 9.  Mr. Gatlin's complaint, however, does not identify which requirements of the Duran Consent Decree or the PREA CoreCivic allegedly failed to implement, and the Court will not speculate about which requirements he contends were not implemented.  Moreover, Mr. Gatlin does not allege what "de facto" policy caused him injury in his complaint.  It is Mr. Gatlin's burden to allege sufficient facts to state a claim.  He cannot attempt to amend his complaint with allegations in his response to the motion to dismiss.  *See Issa v. Comp USA*, 354 F.3d 1174, 1179 (10th Cir. 2003).

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers*, 383 U.S. at 726.  A district court does not "abuse [its] discretion" when it declines to exercise supplemental jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it 'has dismissed all claims over which it has original jurisdiction.' " *Muller v. Culbertson*, 408 F. App'x 194, 197 (10th Cir. 2011) (unpublished).  This Court previously has stated that a district court usually should decline to exercise supplemental jurisdiction when 28 U.S.C. § 1367(c) applies.  *See Armijo v. New Mexico*, 2009 WL 3672828, at *4, 2009 U.S. Dist. LEXIS 101917, at *4 (D.N.M. 2009) (unpublished) ("The Supreme Court and the Tenth Circuit have not only acknowledged such a result, they have encouraged it.").

Having found that Mr. Gatlin fails to state a claim for a violation of his constitutional rights, I recommend that his claims in Counts 1, 2, and 3 be dismissed with prejudice.  Rule of Civil Procedure Rule 15(a) provides that leave to amend a party's complaint "shall be freely given when justice so requires."  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).  The district court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend his complaint.  *Id.* (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991)).  In determining whether to allow amendment of a complaint, the court considers several factors, including "whether the amendment will result in undue prejudice, whether the request was unduly and inexplicably delayed, was offered in good faith, or that the party had had sufficient opportunity to state a claim and failed."  *State Distributors, Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984).

Here, Mr. Gatlin, appearing pro se, filed his complaint in state court.  Doc. 1-1.  After

CoreCivic removed the complaint to federal court, Augustine Rodriguez entered an appearance

on Mr. Gatlin's behalf.  Doc. 4.  The Court, *sua sponte*, "[r]ecognizing that a pro se party may

not have the training to provide an adequate complaint," granted Mr. Rodriguez an opportunity

to amend the complaint.  Doc. 5 (granting Mr. Gatlin 30 days to file an amended complaint).

Mr. Rodriguez did not avail himself of this opportunity.  Consequently, the Court found that Mr.

Gatlin's original pro se complaint filed in state court is the operative complaint.  Doc. 6.  In

addition, in its motion, CoreCivic specifically asks the Court to dismiss the case with prejudice,

Doc. 8 at 17–18, but Mr. Gatlin did not respond to this aspect of CoreCivic's motion at all, *see*

*generally* Doc. 11.  Mr. Gatlin has had sufficient opportunity to state a claim and failed.  I

therefore recommend that the claims against Core Civic in Counts 1, 2, and 3 be dismissed with

prejudice.

Having determined that the claims that provide this Court with original jurisdiction

should be dismissed, I further recommend that the Court decline to exercise supplemental

jurisdiction over Mr. Gatlin's state law claims in Counts 4 and 5, and that it remand those claims

to the state court.

E.   The Cases Cited by Mr. Gatlin are Inapplicable, and his Arguments are Unavailing.

In his response, Mr. Gatlin conflates the standards for "constitutional torts" pursuant to

§ 1983 and the common law torts of negligence, negligent hiring, training, and credentialing.

Citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305–06 (1986), Mr. Gatlin argues

that the Court "must also be guided by certain common law tort principles of damages and

causation which apply in the § 1993 context for the claims of negligence in hiring, training and

credentialing correctional and medical officers." Doc. 11 at 5–6. *Memphis*, however, does not discuss negligence in hiring, training, and credentialing of correctional officers.

In *Memphis*, a tenured teacher in the Memphis, Michigan, public schools, was suspended following parents' complaints about his teaching methods in a seventh-grade life science course that included the showing of allegedly sexually explicit pictures and films. *Memphis*, 477 U.S. at 300–01. Before being reinstated, the teacher brought suit in federal court alleging that his suspension deprived him of liberty and property without due process of law and violated his First Amendment right to academic freedom. *Id*. and 301–02. He sought both compensatory and punitive damages. *Id*. at 302. In the appeal before the Supreme Court, the school board challenged "the jury instructions authorizing damages for violation of constitutional rights on the ground that those instructions permitted the jury to award damages based on its own unguided estimation of the value of such rights." *Id*. at 304. With regard to § 1983, the Supreme Court explained,

> We have repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution. Accordingly, when § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts.

*Id*. at 305–06 (internal citations and quotation marks omitted). While the Supreme Court noted that the level of damages for violations of constitutional rights is determined according to principles derived from the common law of torts, nowhere in *Memphis* did the Supreme Court suggest that a plaintiff may bring the common law tort claims of negligence in hiring, training, and credentialing correctional and medical officers under § 1983.

Indeed, "[i]t is well settled that merely negligent acts or omissions will not support a cause of action under section 1983." *Wilson v. Meeks*, 52 F.3d 1547, 1558 (10th Cir. 1995)

(citing *Davidson v. Cannon*, 474 U.S. 344 (1986); *Daniels v. Williams*, 474 U.S. 327 (1985)), *abrogated on other grounds as recognized in Stuart v. Jackson*, 24 F. App'x 943, 954 (10th Cir. 2001) (unpublished).  Specifically, under the Eight Amendment, a government official must act with "deliberate indifference" to an inmate's safety, not simply negligence.  *See Smith*, 445 F.3d at 1258.  In other words, the torts of "negligence in hiring, training, and credentialing, and negligence per se" do not rise to the level of constitutional torts under the Eighth Amendment.

In further support of the contention that the standard under § 1983 tracks "common law tort suits," Mr. Gatlin cites *Malley v. Briggs*, 475 U.S. 335, 344–45 n.7 (1986).  In *Malley*, plaintiffs brought a civil rights action against state trooper and the state of Rhode Island, alleging that in applying for warrants to arrest them, the trooper violated their rights under the Fourth and Fourteenth Amendments.  *Id.* at 337–38.  In discussing the "natural consequences of his actions," the Supreme Court was discussing "the causal chain between the [officer's] application for the warrant and the improvident arrest."  *Id.* at 344 n.7.  The Supreme Court explained,

> As we stated in  *Monroe v. Pape*, 365 U.S. 167, 187 . . . (1961), § 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions."  Since the common law recognized the causal link between the submission of a complaint and an ensuing arrest, we read § 1983 as recognizing the same causal link.

*Id.*  The causal connection in *Malley* has no bearing on whether Mr. Gatlin has stated a claim under the Eight Amendment in this case.  Mr. Gatlin has not stated a "causal connection" because he failed to name a person who was deliberately indifferent to his safety or medical needs and, as a result, caused him harm.

Mr. Gatlin also cites *Williamson v. Mills*, 65 F.3d 155, 158–59 (11th Cir. 1995), and W. PAGE KEETON, ET AL., PROSSER AND KEATON ON THE LAW OF TORTS §§ 41-42, at 236-80 (5th ed. 1984) for the proposition that "[u]nder traditional tort principles, causation has two required

elements: cause-in-fact and legal or proximate cause."  Doc. 11 at 6.  Mr. Gatlin's reliance on

*Williamson* is misplaced.  In *Williamson*, the Eleventh Circuit discussed warrantless arrests made

under the Fourth Amendment and whether an officer was entitled to qualified immunity against a

claim of arrest without probable cause.  *Williamson*, 65 F.3d at 158.  Nowhere in the pages cited

by Mr. Gatlin does the *Williamson* court discuss "cause-in-fact" or "proximate cause."  Rather,

the court is discussing "probable cause" as a necessary element of a warrantless arrest.  *Id.*  In

citing PROSSER AND KEATON, again, Mr. Gatlin conflates his state tort claims of negligence in

hiring, training, and credentialing and negligence per se, with his claims under the Eighth

Amendment and § 1983.  Doc. 11 at 6 ("In other words, each constitutional tort: negligence in

hiring, training, and credentialing and negligence per se, is an individual cause of action and

therefore each must be independently analyzed so that the damages for the foreseeable

consequences of each of the tortious acts can be sparsed [sic] out.").  The standard asserted by

Mr. Gatlin is irrelevant to the analysis under the Eighth Amendment or § 1983.

Finally, with regard to the Duran Consent Decree and PREA, Mr. Gatlin argues that his

claims "arise out of the failure of the Defendants to carry out a statutory duty in the conduct of

its own affairs," and that that duty is not discretionary.  Doc. 11 at 7.  Mr. Gatlin does not cite

any legal authority for this proposition.  Instead, he asserts "[c]ommon sense tells us that

protecting inmates from cruel and unusual punishment is not discretionary, and therefore not

implementing and ensuring the implementation of the Duran Consent Decree and PREA are not

discretionary."  Mr. Gatlin draws the concept of "discretionary duty" from *Berkovitz by*

*Berkovitz v. United States*, 486 U.S. 531 (1988).  *See* Doc. 11 at 8 (citing *Berkovitz*).  Mr.

Gatlin's reliance on *Berkovitz* is misplaced.

In *Berkovitz*, a minor, and his parents acting as guardians, filed a Federal Tort Claims Act ("FTCA") suit because the minor contracted a severe case of polio after ingesting a dose of an oral polio vaccine manufactured by Lederle Laboratories. *Berkovitz*, 486 U.S. at 533. The plaintiffs alleged violations of federal law and policy by the National Institutes of Health's Division of Biologic Standards ("DBS") in licensing Lederle to produce the vaccine, and by the Bureau of Biologics of the Food and Drug Administration ("FDA") in approving the release to the public of the particular lot of vaccine containing Berkovitz's dose. *Id*. The issue in *Berkovitz* was "whether the discretionary function exception of the Federal Tort Claims Act (FTCA or Act), 28 U.S.C. § 2680(a), bars a suit based on the Government's licensing of an oral polio vaccine and on its subsequent approval of the release of a specific lot of that vaccine to the public." *Id.* The Supreme Court explained that the FTCA, 28 U.S.C. § 1346(b), generally authorizes suits against the United States for damages under certain circumstances, but that many exceptions apply to the broad waiver of sovereign immunity. *Id*. at 535. The *Berkovitz* Court specifically addressed the exception that no liability shall lie for

> "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

*Id.* at 535. Clearly, the *Berkovitz* case has no applicability here. First, Mr. Gatlin is not suing a federal agency or an employee of the federal government. Instead, he is suing the New Mexico State Department of Corrections and CoreCivic, a corporation "under contract to the State of New Mexico's Department of Corrections." Doc. 1-1 at 3. Second, Mr. Gatlin has not brought any claims under the FTCA. Rather, the complaint is clear that he is asserting claims for violations of his constitutional rights secured by the Eighth and Fourteenth Amendments and

state tort claims sounding in negligence. *Id.* at 4. Whether CoreCivic's conduct was discretionary is wholly irrelevant to the inquiry in this case.[12]

## V.     Conclusion

Mr. Gatlin's complaint fails to state a plausible claim against CoreCivic for a violation of his Eighth Amendment rights pursuant to §1983, and I recommend that his constitutional claims in Counts 1, 2, and 3 against CoreCivic be dismissed with prejudice. Because Mr. Gatlin fails to state a claim over which this Court has original jurisdiction, I further recommend that the Court not exercise supplemental jurisdiction over his state law claims, and that the Court remand those claims to the state court.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court.** *Id.* **In other words, if no objections are filed, no appellate review will be allowed.**

_Laura Fashing_
Laura Fashing
United States Magistrate Judge

---

[12] Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would be aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Public employees may raise qualified immunity as a defense when they are sued for alleged violations of a plaintiff's constitutional rights under § 1983. *See Valdez v. Roybal*, 186 F. Supp. 3d 1197, 1250–51 (D.N.M. 2016). To the extent Mr. Gatlin was attempting to argue the "discretionary function" with regard to qualified immunity, that argument also fails. CoreCivic did not raise a qualified immunity defense as Mr. Gatlin failed to name any individual who would be shielded from liability by qualified immunity.